IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES ROBINSON,                              :

      Plaintiff,                            :
                                                       Case No. 3:05cv403

      vs.                                  :
                                              JUDGE WALTER HERBERT RICE

GENERAL MOTORS CORPORATION,  :
et al.,                                      :

      Defendants.                           :

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER, FOR PRELIMINARY INJUNCTION
AND FOR A HEARING (Doc. #2); DECISION AND ENTRY SUSTAINING
MOTION TO DISMISS OF DEFENDANTS GENERAL MOTORS
CORPORATION AND RICHARD WAGONER, JR. (DOC. #5); DECISION
AND ENTRY SUSTAINING MOTION TO DISMISS OF DEFENDANT UAW
LOCAL 696 (DOC. #13); JUDGMENT TO BE ENTERED IN FAVOR OF
DEFENDANTS AND AGAINST PLAINTIFF, DISMISSING THIS
LITIGATION, WITHOUT PREJUDICE, FOR WANT OF SUBJECT
MATTER JURISDICTION; TERMINATION ENTRY

---

This putative class action arises out of the spinoff of Delphi Automotive

Systems Corporation ("Delphi") from Defendant General Motors Corporation

("GM"). Plaintiff[1] brings this litigation in order to secure payment of benefits to

---

[1]The initial Plaintiff in this litigation was James Robinson ("Robinson"). However, a motion was attached to Plaintiff's Second Amended Complaint (Doc. #4), requesting that James Peebles ("Peebles") be substituted for Robinson. After the Second Amended Complaint had been filed, this Court granted Plaintiff's Motion to

himself and to the members of the class he seeks to represent, which GM is alleged to have promised to those of its employees who became employees of Delphi as a result of the spinoff.[2]  That promise is contained in a Benefit Guarantee, an agreement between GM and the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW").[3]  A copy of that agreement is attached to and authenticated by the affidavit of Lawrence S. Buonomo, an attorney employed by GM.[4]  The Benefit Guarantee sets forth different conditions under which GM would guarantee benefits to those of its employees who became employees of Delphi, in the event that Delphi or its successors ceased to do business or failed to provide benefits as a result of financial distress.  The Benefit

---

Substitute Paul Bryant for Peebles.  See Doc. #20.  This Court has, nevertheless, continued to utilize Robinson's name in the caption of this litigation, as have the parties.

[2]This litigation was initiated in the Common Pleas Court for Montgomery County, Ohio.  Defendants removed this litigation to this Court, alleging that this Court could exercise subject matter jurisdiction in accordance with 28 U.S.C. § 1332(d).  See Doc. #1.  Under that statutory provision, federal courts can exercise subject matter jurisdiction over class actions in which the amount in controversy of all putative class members, aggregated, exceeds $5,000,000, the class is comprised of not less than 10 members and the citizenship of at least one plaintiff differs from that of at least one defendant.  The Defendants allege in their Notice of Removal that each of those requirements has been met.  See Doc. #1 at ¶¶ 11-12.  The Plaintiff has not challenged those allegations.

[3]Plaintiff has also named Richard Wagoner, Jr. ("Wagoner"), alleged to be President and CEO of GM, as a Defendant.  The Plaintiff only alleges that Wagoner is the President and CEO of GM and that the members of the putative class will be harmed if Wagoner is not enjoined.  Although Plaintiff does not indicate what Wagoner has done other than to be the President and CEO of GM, the Court does not discuss Wagoner separately from GM.

[4]That affidavit is attached to GM's Motion to Dismiss (Doc. #5).

Guarantee also provides that GM's obligations shall be secondary to the obligations of Delphi and the Pension Benefit Guarantee Corporation ("PBGC").

In the Second Amended Complaint (Doc. #4), the Plaintiff states that this litigation is being brought in anticipation of the breach of promises made by GM to its former employees that it would guarantee certain benefits, in the event that Delphi suffered financial distress and that, without intervention of this Court, Delphi, which is in bankruptcy, will seek to reduce the wages and benefits it owes to its employees, effectively voiding the promises made by GM.[5] Doc. #4 at 1-2. Plaintiff sets forth claims seeking specific performance of GM's promises in the Benefit Guarantee and declaratory and injunctive relief, preventing GM from refusing to honor its promises. In addition to seeking specific performance and declaratory and injunctive relief, Plaintiff has requested the award of liquidated damages, payable directly to the members of the class or in trust for their benefit. Plaintiff alleges that GM's obligations under the agreement were triggered by Delphi's bankruptcy filing. Id. at ¶ 15. Plaintiff does not allege, however, that Delphi has, either prior to or after filing for bankruptcy protection failed to pay him or any member of the putative class any benefit covered by the Guarantee Agreement. Nor does Plaintiff assert that GM has repudiated its obligations. Plaintiff has also joined UAW Local 696 ("Local 696") as a party Defendant, although it is not clear, from a reading of the Complaint, if Plaintiff has set forth a claim against that union and, if so, what that claim would be.

---

[5]It bears emphasis that Delphi is not a party to this litigation.

- 3 -

This case is now before the Court on the Motions to Dismiss filed, respectively, by GM (Doc. #5) and Local 696 (Doc. #13).[6] In those motions, the Defendants argue that this Court cannot exercise subject matter jurisdiction over Plaintiff's Second Amended Complaint and that Plaintiff's pleading fails to state a claim upon which relief can be granted. For reasons which follow, this Court concludes that it cannot exercise subject matter jurisdiction over this litigation. Accordingly, it sustains the Defendants' motions, without addressing their alternative arguments that Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted.

Both GM and Local 696 argue that this Court must dismiss this litigation for want of subject matter jurisdiction, because the Plaintiff's claims are not ripe. In Airline Professionals Ass'n of the Int. Brotherhood of Teamsters, Local 1224 v. Airborne, Inc., 332 F.3d 983 (6th Cir. 2003), the Sixth Circuit reviewed certain principles applicable to the ripeness doctrine:

> The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n. 18 (1993). Requiring that plaintiffs bring only ripe claims helps courts "avoid[ ] … premature adjudication." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967); see also Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506 (1972) (explaining that ripeness asks whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). The ripeness doctrine acknowledges the problem inherent in adjudicating a dispute "anchored in future events that may not occur as anticipated, or at all." Nat'l Rifle Ass'n of Am. v. Magaw, 132 F.3d 272, 284 (6th Cir. 1997). Determining whether a claim is ripe involves evaluating "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs., 387 U.S. at 149. To be ripe for review, claims must satisfy both the fitness and the hardship components of the

---

[6]Wagoner has joined in the motion filed by GM.

inquiry.  Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351, 1362 (6th Cir. 1995).

Id. at 987-88.  See also, Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 580 (1985) (noting that the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements").  To determine whether a claim is ripe, the Sixth Circuit weighs three factors:

> Ripeness requires us to weigh several factors in deciding whether to address the issues presented for review.  First, we examine the "likelihood that the harm alleged by [the] plaintiffs will ever come to pass."  United Steelworkers, Local 2116 v. Cyclops Corp., 860 F.2d 189, 194 (6th Cir. 1988).  Second, we consider whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims.  Id. at 195.  Finally, we must assess the "hardship to the parties if judicial relief is denied at [this] stage" in the proceedings.  Id.; see also Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 162 (1967).

Adult Video Ass'n v. United States Department of Justice, 71 F.3d 563, 568 (6th Cir. 1995).  Weighing those three factors herein causes this Court to conclude that the Plaintiff's claims are not ripe for adjudication.

First, the Plaintiff has neither set forth allegations in the Second Amended Complaint, nor submitted evidence, indicating that he and the members of the class he seeks to represent will ever suffer the harm they fear, i.e., that they will not receive the benefits that GM guaranteed under the Benefit Guarantee.  As is indicated above, that agreement imposes obligations on GM, in the event that Delphi or its successors cease operations or stop paying certain benefits to its employees and retirees as a result of financial distress.  Although Plaintiff has

alleged that Delphi is in bankruptcy,[7] he has not alleged or presented evidence that Delphi has either ceased operations or stopped paying the benefits in question. Moreover, there is no allegation or evidence that GM has ever repudiated its obligations under the Benefit Guarantee.  Therefore, Plaintiff's claims are built on two levels of speculation, to wit: that Delphi will cease operations or stop paying the benefits covered by the Benefit Guarantee and that, upon the occurrence of the former, GM will fail to live up to its obligations under that agreement.  Given this dual level of speculation, this Court concludes that there is no demonstrated likelihood that the Plaintiff and the members of the putative class he seeks to represent will suffer the harm they fear.

Second, the factual record is not fully enough developed for the Court to produce a fair adjudication on the merits.[8]  It is certainly possible that, when Delphi emerges from its bankruptcy proceedings, there will have been a decrease in its payment of those benefits which are covered by the Benefit Guarantee.  Moreover, the Court assumes for present purposes that GM will breach its obligations under that agreement, making some relief to the Plaintiff and the members of the putative class necessary.  However, since there is no allegation or evidence that Delphi has even filed its plan of reorganization, let alone that such a plan has been approved, a record does not exist for determining the extent of that necessary relief.  In other

---

[7]This Court takes judicial notice of the fact that Delphi is in reorganization proceedings under Chapter 11 of the Bankruptcy Code.

[8]In the Regional Rail Reorganization Act Cases, 419 U.S. 102 (1974), the Supreme Court added flesh to this factor, stating that "there are situations where, even though an allegedly injurious event is certain to occur, the Court may delay resolution of constitutional questions until a time closer to the actual occurrence of the disputed event, when a better factual record might be available." Id. at 143.

- **6** -

words, a record does not exist which would allow the fact finder to determine the extent of GM's obligation, as a result of its and Delphi's assumed repudiations. In addition, given that Delphi has not repudiated its obligations, there is no way of ascertaining the extent of that repudiation or the extent of the undertaking of the PBGC as a result of that repudiation.

Third, no hardship will be imposed upon Plaintiff or the members of the class he seeks to represent, by making them wait until Delphi ceases to pay the benefits in question and GM repudiates its obligations, before initiating a lawsuit. Therefore, Plaintiff and the members of the putative class will not suffer prejudice as a result of this Court's conclusion that their claims are not ripe.

Finally, in United Steelworkers of America, Local 2116 v. Cyclops Corp., 860 F.2d 189 (6th Cir. 1988), the Sixth Circuit concluded that the plaintiff's claims were not ripe in litigation arising under strikingly similar circumstances. Therein, Cyclops Corporation ("Cyclops") sold its Portsmouth, Ohio, coke plant to New Boston Coke Corporation ("New Boston"). As a result of that transaction, New Boston assumed all of Cyclops' accrued pension obligations, and Cyclops transferred a portion of its pension fund to New Boston to cover those obligations. Thereafter, New Boston initiated bankruptcy proceedings under Chapter 11 of the Bankruptcy Code. Although the coke plant continued to be operated and there had been no default on the payment of pension benefits, United Steelworkers of America, Local 2116 ("Local 2116"), the union which represented employees at the Portsmouth coke plant both prior to and after the sale of that facility, filed suit against Cyclops, alleging that the latter had violated the collective bargaining agreement it had entered into with Local 2116, by underfunding the pension

accounts that it had transferred to New Boston, as well as various provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

After the District Court had granted summary judgment in favor of Cyclops on all claims, Local 2116 appealed. The Sixth Circuit concluded that the claim of Local 2116 that Cyclops had underfunded the pension accounts was not ripe and, therefore, vacated the grant of summary judgment in favor of Cyclops, remanding the matter for dismissal of that claim without prejudice for want of subject matter jurisdiction.[9] To reach that conclusion, the Cyclops court balanced the three factors discussed above. With respect to the first factor, the Sixth Circuit held that there was not a likelihood that the harm alleged by plaintiffs would ever come to pass, because there was no indication that New Boston would default on its obligation to provide pension benefits, thus making the alleged underfunding by Cyclops potentially irrelevant.[10] With respect to the second factor, the Sixth Circuit noted that, since New Boston had not defaulted on its obligation to pay pension benefits, the record did not reveal whether New Boston would pay a portion of those benefits or whether the PBGC would pay all or part of the amount that New Boston did not pay, rendering it possible that Cyclops would have no liability even if New Boston were to default. With respect to the third factor, the Sixth Circuit concluded that "a delay in the litigation of this hypothetical claim

---

[9]In addition, the Sixth Circuit affirmed the grant of summary judgment in favor of Cyclops on the ERISA claims of Local 2116.

[10]As is indicated, there is a second level of speculation herein, unlike Cyclops, i.e., whether GM will repudiate its obligations under the Benefit Guarantee, if Delphi repudiates its obligations. Therein, Cyclops had already paid a portion of its pension fund to New Boston.

would not unduly prejudice plaintiffs' interests," because an adjudication in favor of Local 2116 would leave it "with a declaration of future, hypothetical rights and no present means with which to enforce it."  Id. at 197.

Based upon the foregoing, this Court concludes that Plaintiff is seeking to entangle it in an adjudication of abstract claims and that Plaintiff's claims are not ripe for adjudication.  Therefore, this Court is without subject matter jurisdiction over those claims.[11]  Accordingly, the Court sustains the Motions to Dismiss filed, respectively, by GM (Doc. #5) and Local 696 (Doc. #13).  Moreover, given that the Court is without subject matter jurisdiction over this litigation, it overrules Plaintiff's Motion for Temporary Restraining Order, for Preliminary Injunction and for a Hearing (Doc. #2).

The Court directs that judgment be entered in favor of Defendants and against Plaintiff, dismissing Plaintiff's claims without prejudice, for want of subject matter jurisdiction.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

September 25, 2006

                                                                         /s/ Walter Herbert Rice
                                                                        WALTER HERBERT RICE, JUDGE
                                                                        UNITED STATES DISTRICT COURT

---

[11]Given that conclusion, it is not necessary to address GM's arguments that the Court is without subject matter jurisdiction, because the Plaintiff's claims do not present a case or controversy and, further, given that he is without standing to bring this litigation.

Copies to:

Counsel of Record.